b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

ROBBY WARNER,                        CIVIL ACTION 1:18-CV-01000
Appellant

VERSUS                               JUDGE DRELL

ACTING COMMISSIONER                  MAGISTRATE JUDGE PEREZ-MONTES
NANCY A. BERRYHILL,[1]
Appellee

## REPORT AND RECOMMENDATION

Robby Warner ("Warner") appeals the denial of his claim for Social Security Disability Insurance Benefits ("DIB"). Substantial evidence does not support the Administrative Law Judge's ("ALJ's")/Commissioner's conclusion that Warner's disability onset date was February 13, 2013, or that Warner was engaging in substantial gainful activity from February 13, 2013 until July 26, 2014. Further, the ALJ failed to make a finding as to whether Warner's work from August 9, 2012 to February 13, 2013 was an unsuccessful work attempt. Therefore, Warner's appeal should be GRANTED, the Commissioner's final decision should be VACATED, and the case should be REMANDED.

---

[1] On June 17, 2019, Acting Commissioner of Social Security Nancy Berryhill was replaced by Commissioner Andrew Saul.

I.    Background

A.    Procedural Background

Warner filed an application for DIB on July 22, 2011, alleging a disability onset date of August 7, 2010 (Doc. 6-1, p. 22) due to a right shoulder injury, lower back injury, sprained hips, depression, and anxiety (Doc. 6-1, p. 34).  That application was initially denied by the Social Security Administration ("SSA") on March 2, 2012  (Doc. 6-1, p. 50).  Warner did not appeal.

Warner filed a second application for disability insurance benefits on May 13, 2015, alleging a disability onset date of August 9, 2012 (Doc. 6-2, p. 18) due to: severe depression; anxiety; PTSD; "right shoulder (surgery) pain and weakness"; "chronic back pain (lumber surgery)"; "hip pain and degeneration (surgery)"; "constant headaches and memory loss from a work accident"; knees; ankles; and "left thigh (gun-shot wound)."  (Doc. 6-2, p. 25).  That application was initially granted with an onset date of May 1, 2014 (Doc. 6-1, p. 71; Doc. 6-2, p. 97).  However, Warner returned to work on August 5, 2014, working full time and earning $27.10 per hour without a subsidy. (Doc. 6-2, p. 97; Doc. 6-3, p. 2).  Warner's DIB application was then denied because Warner was engaging in substantial gainful activity (Doc. 6-2, p. 97; Doc. 6-3, pp. 2, 4).

A *de novo* hearing was held before an ALJ on June 20, 2017 at which Warner appeared with his attorney.  (Doc. 6-3, p. 76).  The ALJ noted Warner had been granted disability benefits with an onset date of May 1, 2014,[2] but that a favorable

---

[2] May 1, 2014 is the date Warner reported to the SSA that he stopped working.  (Doc. 6-2, p. 25).

determination had been overturned because Warner had performed substantial gainful activity "within the waiting period or within 12 months of onset." (Doc. 6-1, p. 19). The ALJ concluded that Warner was not disabled on May 1, 2014 (the disability onset date determined by the SSA) because he was engaged in substantial gainful activity from August 14, 2014 through May 31, 2015, and performed continuous military duty with the United States Army Reserve through 2016. (Doc. 6-1, p. 19). Thus, the disability evaluation ended at Step 1.

Warner requested a review of the ALJ's findings, but the Appeals Council declined to review it (Doc. 6-1, p. 6), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Warner filed this appeal for judicial review of the Commissioner's final decision. (Doc. 10). Warner raises the following grounds for relief on appeal:

1. The ALJ incorrectly established May 1, 2014 as Warner's disability onset date instead of August 9, 2012.

2. New and material evidence was submitted to the Appeals Council that necessitates a remand as provided by 20 C.F.R. § 404.970(b).

The Commissioner filed a response to Warner's appeal. (Doc. 11).

## B.    Medical and Administrative Records

Dr. Gerald Dzurik, a DDS examiner, examined Warner's medical records in November 2014. (Doc. 6-1, pp. 67). Dr. Dzurik found Warner has exertional limitations of only occasionally lifting of carrying 10 pounds; stand and/or walk a total of "slightly less than" 2 hours in an 8-hour day; sit a total of 6 hours in an 8-hour day; pushing and/or pulling is limited in the left lower extremity; only occasionally

climbing ramps/stairs, balancing, stooping, kneeling, crouching, or crawling; limited reaching with the right arm and limited handling with the right hand; and he must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Doc. 6-1, p. 67).

Dr. Robert McFarlain, Ph.D. also examined Warner's mental health records for the SSA in September 2014. Dr. McFarlain found Warner suffers from an affective disorder and an anxiety disorder. (Doc. 6-1, pp. 63-64). Dr. McFarlain found Warner had a moderate limitation in his ability to understand and remember detailed instructions; a moderate limitation in his ability to interact appropriately with the general public; and a moderate limitation in his ability to respond appropriately to changes in the work setting. (Doc. 6-1, pp. 67-69).

A March 2015 evaluation of Warner's work activity showed he was awarded DIB with an onset date of May 1, 2014. (Doc. 6-2, p. 97). Subsequently, Warner was found to have returned to work on August 5, 2014, working 40 hours per week and earning $27.10 with no subsidy. (Doc. 6-2, p. 97). Warner's DIB award was disallowed due to his substantial gainful activity. (Doc. 6-2, p. 97).

### C.    Administrative Hearing

At the 2017 administrative hearing, Warner testified that he was 49 years old, 5' 10" tall, and weighed about 200 pounds. (Doc. 6-3, pp. 79-80). Warner lives with his wife and receives medical retirement income of about $1400 per month (Doc. 6-3, p. 80). Warner stopped working in May 2015. (Doc. 6-3, p. 80). Warner's wife works as a physical therapy assistant. (Doc. 6-3, p. 83).

Warner testified that he drives an automatic transmission pickup truck (Doc. 6-3, pp. 80-81). Warner completed high school and two years of college. (Doc. 6-3, p. 81). Warner also received vocational training as a mechanic in the National Guard (Doc. 6-3, p. 81). Warner was still in the Army Reserve at the time of the administrative hearing. (Doc. 6-3, p. 81).

Warner was a federal civil service mechanic for the Government, and worked on a variety of military automotive equipment. (Doc. 6-3, p. 81). Warner's job involved some welding. (Doc. 6-3, p. 82).

Warner has physical problems caused by an accident and back injury suffered when he was in the military, and another accident in 2012. (Doc. 6-3, p. 84).

On August 9, 2012, when Warner had a civil service job as a mechanic, he fell eight feet from a "retch," which is a container loading machine for loading Army containers onto ships or trucks. (Doc. 6-3, pp. 91, 94). Warner testified that he was off work for a week, then returned to work on modified light duty for six months, until February 2013. (Doc. 603, p. 94).

Warner had left hip surgery in February 2013 for a labrum tear, ligament tear, and tendon release and cleanup. (Doc. 6-3, p. 85). Warner had physical therapy after his hip surgery. (Doc. 6-3, p. 85). Warner had a laminectomy and discectomy in February 2014, with physical therapy afterward. (Doc. 6-3, pp. 84-85). Warner again returned to work in August 2014. (Doc. 6-3, p. 95).

Warner testified that, from August 2012 through February 2013, his work duties were modified to accommodate him, and he missed about 130 hours of work

during that time.  (Doc. 6-3, pp. 95-96).  Warner worked in the front office, answering phones and doing some computer work.  (Doc. 6-3, p. 82).  Warner was placed on leave without pay on February 13, 2013.  (Doc. 6-3, p. 97).

Warner testified that he stopped working in May 2015.  (Doc. 6-3, p. 97).  Warner medically retired from his federal civil service job after that.  (Doc. 6-3, p. 83).

Warner testified that, although he has stopped working, he does not feel better.  (Doc. 6-3, p. 83).  Warner is still receiving treatment at the Veterans Administration Hospital in Pineville.  (Doc. 6-3, p. 83).  Warner drives there or his wife takes him (Doc. 6-3, p. 83).  One of Warner's medications made him sleepy and caused problems during his 45 minute drive home from work.  (Doc. 6-3, p. 83).

Warner testified he is being treated for PTSD and cannot work around or with a large group of people.  (Doc. 6-3, pp. 82-83).  Warner's PTSD manifests itself through a lot of anxiety, frustration, and anger.  (Doc. 6-3, p. 83).  Warner's PTSD caused him to be short-tempered and have anxiety attacks, and to not get along with his co-workers and supervisors.  (Doc 6-3, p. 83).

Warner now has constant radiating pain down his right side into his right foot.  (Doc. 6-3, p. 85).  Warner's problem has been worse after the surgery than it was before, and his doctors have discussed another surgery.  (Doc. 6-3, p. 85).  Warner testified that he is still learning what he can and cannot do at home.  (Doc. 6-3, p. 84).  Warner tries to do yard work, but he hires his nephew to help him when it is too much.  (Doc. 6-3, p. 84).  Warner walks to the end of his driveway every day to get the mail, and he starts having hip pain and fatigue on his way back to the house.  (Doc.

6

6-3, pp. 85-86).  It takes about two minutes to walk down his driveway.  (Doc. 6-3, p. 86).  Riding a stationary bicycle helps relieve the pressure on his hip while affording him exercise.  (Doc. 6-3, p. 86).  Warner is sore and fatigued the day after he rides it. (Doc. 6-3, p. 86).

Warner takes hydrocodone for pain, tizanidine to relax his lower back muscles, and diclofenac cream to rub into his lower back.  (Doc. 6-3, p. 92).  Warner goes to the VA at least once a month, for both primary care and the mental health clinic.  (Doc. 6-3, p. 92).

Warner testified that he neither smokes nor drinks.  (Doc. 6-3, p. 87).  He searches the internet during the day.  (Doc. 6-3, p. 87).  He does not socialize through church or a veterans' group; does not visit friends during the day; and does not garden or grocery shop.  (Doc. 6-3, pp. 88-90).  Warner's step-children live out-of-state.  (Doc. 6-3, p. 89).  Warner used to fish and hunt, but has not been able to hunt with guns since he developed psychological issues after being shot several years ago.  (Doc. 6-3, p. 89).  Warner tried archery, but his shoulder surgery ended that.  (Doc. 6-3, p. 90). Warner has two dogs.  (Doc. 6-3, p. 90).  Warner tries to help with chores at home, but is not able to do "as much as a normal person."  (Doc. 6-3, p. 90).

When Warner did mechanical work, he used computers, schematics, and diagrams.  (Doc. 6-3, p. 88).  In the military, Warner was a Master Sergeant, E-8, and supervised up to 54 people.  (Doc. 6-3, p. 87).

### D. <u>The ALJ"s Findings</u>

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a).  The sequential process required the ALJ to determine whether Warner: (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work.  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  <u>See</u> <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120 (1995) (citing <u>Lovelace v. Bowen</u>, 813 F.2d 55, 58 (5th Cir.1987)).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy.  <u>See</u> <u>Greenspan</u>, 38 F.3d at 237.

To show that he is disabled, a claimant must demonstrate that he is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." <u>Neal v. Bowen</u>, 829 F.2d 528, 530 (5th Cir.1987) (quoting 42 U.S.C. § 423(d)(1)(A)).

The ALJ found Warner was working within 12 months of his disability onset date of May 1, 2014. The ALJ further found that Warner's work in August 2014 through May 2015 was not an "unsuccessful work attempt." (Doc. 6-1, p. 19). The ALJ concluded that Warner was "presently working" and, therefore, was not disabled. (Doc. 6-1, p. 19). The ALJ further found that Warner was in a "leave without pay status" with his civilian job from February 13, 2013 through July 2014 because he had been mobilized and deployed with the United States Army Reserve. (Doc. 6-1, pp. 20-21). The ALJ's analysis ended at Step 1.

## II.    Law and Analysis

### A.    Scope of Review

In considering Social Security appeals, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. See McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. See Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. See Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder.  See Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983).  The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court.  See Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981); see also Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992).  The court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law.  See Dellolio, 705 F.2d at 125.  But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  See Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

**B.    The ALJ correctly rejected Warner's proposed disability onset date of August 9, 2012.**

Warner contends the ALJ incorrectly found May 1, 2014 was Warner's disability onset date, instead of August 9, 2012.  Warner argues that his work from August 2012 through February 2013, and from August 2014 through May 2015, were unsuccessful work attempts, and the ALJ erred in concluding it was substantial gainful activity.

**1.    Substantial gainful activity and work attempts.**

Substantial work activity involves significant physical or mental activities. Work may be substantial even if performed on a part-time basis or if the claimant does less, gets paid less, or has less responsibility than he had in his previous work.

20 C.F.R. §§ 404.1572(a), 416.972(a).  Gainful activity is work done for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b). Substantial gainful activity is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  See Meadows v. Astrue, 2009 WL 1563523 at *13 (N.D. Tex. 2009).

Ordinarily, work a claimant has done will not show that he is able to do substantial gainful activity if, after he worked for a period of 6 months or less, his impairment forced him to stop working or to reduce the amount of work he does so that his earnings from such work fall below the substantial gainful activity earnings level in paragraph (b)(2) of this section, and he meets the conditions described in paragraphs (c)(2), (3), and (4) of this section.  See 20 C.F.R. § 404.1574(c)(1).

There must be a significant break in the continuity of a claimant's work before he will be considered to have begun a work attempt that later proved unsuccessful. See 20 C.F.R. § 404.1573(c)(2).  The claimant must have stopped working or reduced his work and earnings below the substantial gainful activity earnings level because of his impairment or because of the removal of special conditions that were essential to the further performance of his work.  See 20 C.F.R. § 404.1573(c)(2).  Prior work is considered to be "discontinued" for a significant period if the claimant was out of work at least 30 consecutive days or if, because of his impairment, he was forced to change to another type of work or another employer.  See 20 C.F.R. § 404.1573(c)(2).

Work of 6 months or less will be considered an unsuccessful work attempt if the claimant stopped working, or reduced his work and earnings below the substantial gainful activity earnings level because of his impairment or because of

the removal of special conditions that took into account his impairment and permitted him to work.  See 20 C.F.R. § 404.1574(c)(3).

Work performed at the substantial gainful activity earnings level for more than six months will not be considered an unsuccessful work attempt, regardless of why it ended or was reduced below the substantial gainful activity earnings level.  See 20 C.F.R. § 404.1574(c)(4).

## 2.    Warner's work history.

Warner contends in his brief that he was injured at work on August 9, 2012, but returned to work about one week later and was assigned modified duties.  (Doc. 7, p. 4).  Warner admits he performed modified job duties for six months, then was placed on leave without pay (LWOP) on February 13, 2013.  (Doc. 7, p. 4).  Warner contends his post-accident work from August 2012 through February 2013 was an unsuccessful work attempt.  (Doc. 6-3, p. 94).  Warner argues his work was "modified light duty," with modifications that were unique to him, including allowing him to miss 130 days of work during that period of time.  (Doc. 603, pp. 95-96).

In the Disability Report filed with Warner's first application for DIB, Warner stated he had worked as a log/maintenance supervisor from July 2008 to August 7, 2010, then worked on "desk duty" for the United States Army since August 7, 2010 and was still doing that job when he applied for benefits.  (Doc. 6-1, p. 82).

In his "work history" report, signed on August 3, 2014, Warner stated he was: (1) an enlisted soldier (mechanic and maintenance manager) in the Louisiana Army National Guard and the United States Army Reserve since November 1984; (2) a

heavy mobile equipment mechanic for the Government (civil service) and the Louisiana Army National Guard from June 1996 through June 2000; (3) a tool and parts attendant for the Government (civil service) and the United States Army Reserve from June 2000 to December 2000; (4) an equipment validation coordinator for the United States Army and the United States Army Reserve-Mobilized from January 2003 through September 2007; (5) an automotive mechanic for the Government (civil service-United States Department of Agriculture) from December 2000 to September 2007; (6) Support Operations NCO in Charge for the United States Army and the United States Army Reserved-Mobilized from July 2008 through March 2012; and (7) a heavy mobile equipment repairer for the Government (civil service) and the United States Army Reserve from September 2007 through August 2012. (Doc. 6-2, p. 49).

In the Disability Report filed with Warner's second application for DIB, Warner stated he was a heavy mobile equipment mechanic for the United States Army Reserve (civil service) from June 1996 through August 2012, earning $27.10/hour. (Doc, 6-2, p,. 26). From August 2012 through February 2013, Warner was given a "light duty" desk job, earning the same pay he had before. (Doc l6-2, p. 26). Warner was a maintenance manager for the United States Army and Army Reserve from November 1984 through May 2014, earning $700/month. (Doc. 6-2, p. 26).

Warner returned to work at his civilian job on August 5, 2014, earning $27.46/hour, and was still working for the United States Army Reserve, earning $760/month. (Doc. 6-2, p. 76; Doc. 6-3, p. 95).

Warner testified that he stopped working in May 2015 and went on "medical retirement." (Doc. 6-3, pp. 83, 97).

> 3. <u>Substantial evidence does not support the ALJ's finding that Warner's disability onset date was February 13, 2013, and no finding was made as to whether Warner's work from August 5, 2012 through February 23, 2013 was an unsuccessful work attempt.</u>

Warner contends his work from August 5, 2012 through February 23, 2013 was an unsuccessful work attempt.

Warner stated in his application for DIB, argued at his administrative hearing, and argued in his brief that his disability onset date was August 9, 2012, the date of his accident. (Doc. 6-2, p. 18; Doc. 6-3, pp. 96-97; Doc. 7). The ALJ apparently misunderstood Warner's argument at the hearing, and concluded that Warner's disability onset date was February 13, 2013, the date of his hip surgery. (Doc. 6-1, p. 20).

Warner's work from August 5, 2012 until the date he was injured, August 9, 2012, could not be part of an unsuccessful work attempt because Warner was not yet injured or impaired. See 20 C.F.R. § 404.1574.

Warner contends his work from August 9, 2012 through February 23, 2013 was an unsuccessful work attempt. Warner admits he was only missed about one week of work after his August 9, 2012 accident. (Doc. 7, p. 4). Warner argues he was

assigned "modified" duties for six months after his accident. (Doc. 7, p. 4). Warner testified the work duties were "modified" to accommodate him. (Doc. 6-3, pp. 95-96). However, Warner explains that, instead of continuing to work as a mechanic, he was given a light-duty desk job for six months after the accident. (Doc. 7, p. 4). Warner was put in the front office area, where he answered phones and did some computer work. (Doc. 6-3, p. 82).

Prior work is considered to be "discontinued" for a significant period if the claimant was out of work at least 30 consecutive days or if, because of his impairment, he was forced to change to another type of work or another employer. See 20 C.F.R. § 404.1573(c)(2). Because Warner was assigned a light-duty job for six months after his accident, Warner's prior work as a mechanic was "discontinued" for a significant period. Warner argues his six-months of light-duty work prior to his hip surgery was an unsuccessful work attempt under 20 C.F.R. § 404.1574(c)(2).

The ALJ did not make any findings as to whether Warner had an unsuccessful work attempt from August 9, 2012 to February 13, 2013.[3] Instead, the ALJ incorrectly found that that Warner had alleged a disability onset date of February 13,

---

[3] Warner earned $27.10 per hour for 40 hours per week in his civil service job with the Army from August 2012 through February 2013, after his accident but before his hip surgery, although he was performing a different, lighter-duty job. Pursuant to 20 C.F.R. § 404.1574(a)(32), "[s]ince persons in military service being treated for severe impairments usually continue to receive full pay, we evaluate work activity in a therapy program or while on limited duty by comparing it with similar work in the civilian work force or on the basis of reasonable worth of the work, rather than on the actual amount of the earnings." It is not clear whether Warner's civil service job with the Army qualifies as "military service" for purposes of § 404.1574.

2013 (the date of his hip surgery) and confined the rest of his findings to that date forward.  (Doc. 6-1, p. 20).

Therefore, substantial evidence does not support the ALJ's finding that Warner's disability onset date was February 13, 2013.

Since substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law.  However, this does not entitle Warner to a decision in his favor based upon the existing record.  Because the record is inconclusive, the case should be remanded to determine: (1) whether Warner was disabled from August 9, 2012 to February 13, 2013; and, if so: (2) whether Warner had an unsuccessful work attempt from August 9, 2012 to February 13, 2013; and (3) Warner's correct disability onset date.

### 4.    The ALJ correctly found Warner was not disabled from August 2014 through May 2015 due to substantial gainful activity.

Warner contends he had a second unsuccessful work attempt from August 2014 through May 2015.  Warner testified that his job was modified for him.

Warner returned to work at his civilian job on August 5, 2014, earning $27.46/hour, and was still working for the United States Army Reserve, earning $760/month.  (Doc. 6-2, p. 76; Doc. 6-3, p. 95).

In a Work Activity Report for the SSA, Warner stated he had received employment income from the Louisiana Army National Guard since July 29, 2014 of $27.10/hour.  (Doc. 6-2, pp. 61-62).  Warner stated that he had performed a "lighter or easier type of work."  (Doc. 6-2, p. 65).

The SSA found Warner had engaged in substantial gainful activity within the five month "waiting period" after being found disabled.  (Doc. 6-2, p. 72).  The SSA also noted that Warner worked more than six months,[4] so his work from July 2014 through May 2015 could not be considered an unsuccessful work attempt.  (Doc. 6-2, p. 97).

Warner admits he worked from August 2014 through May 2015, a period of more than six months.  Pursuant to 20 C.F.R. 404.1574(c)(4), work performed at the substantial gainful activity earnings level for more than 6 months will not be considered an unsuccessful work attempt regardless of why it ended or was reduced below the substantial gainful activity earnings level.  Therefore, Warner's work during that period cannot qualify as an unsuccessful work attempt.[5]

Substantial evidence supports the ALJ's conclusion that Warner's work from August 2014 through May 2015 was not an unsuccessful work attempt.

---

[4] Warner had a check stub dated March 20, 2015 (Doc. 6-2, p. 95) and testified he worked until he retired in May 2015.

[5] Warner argues that his work was "modified."  On January 7, 2015, the SSA confirmed through Warner's employer that, when Warner returned to work, he did light duty work for 40 hours per week without job modifications, earned $27.10 per hour without subsidy, and was as productive as the other employees doing that job. (Doc. 6-2, pp. 85-86, 97).  Warner earned $13,290 in the third quarter of 2014 (Doc. 6-2, p. 72).  The ALJ found Warner's job was not "modified."

However, as Warner argues, he was no longer working as a heavy equipment mechanic, but was instead assigned to a different "light duty" job.  As discussed earlier, rather than having a "modified" job, Warner had to change jobs due to his impairment.

5.  **The ALJ erred in finding Warner was mobilized and working from February 13, 2013 through July 26, 2014.**

Warner was on leave without pay ("LWOP") from his civilian job from February 13, 2013 through July 26, 2014.  (Doc. 6-2, pp. 91-92).  During that time, Warner received disability compensation ($6,5675.14/month) from the Department of Defense ("DOD") through July 2014, pursuant to the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101, *et seq*.  (Doc. 6-2, p. 75).  Warner returned to work at his civilian job on August 5, 2014, earning $27.46/hour, and was still working for the United States Army Reserve, earning $760/month.  (Doc. 6-2, p. 76).

The ALJ interpreted Warner's DOD disability compensation check stubs from February 2013 through July 2014 as pay earned due to mobilization by the United States Army.  (Doc. 6-1, p. 21).  However, the ALJ admitted the record was confusing.  (Doc. 6-1, p. 21).  The ALJ concluded that, because Warner returned to working full-time on August 5, 2014, and continued to work through May 2015 with his civilian job, and through the date of the hearing with his military job, he had engaged in substantial gainful activity during the waiting period and through the date of the hearing.

Warner's July 27, 2014 "Notification of Personnel Action" states Warner was paid from February 13, 2013 through July 26, 2014 pursuant to 5 U.S.C. Chapter 81 (5 U.S.C. § 8101, *et seq*.), which is "compensation for work injuries."  (Doc. 6-2, p. 93).  It appears, therefore, that Warner's checks from the DOD were for compensation due to disability (hip surgery) and not because he was actively deployed.  Warner testified that: he had left hip surgery in February 2013 for a labrum tear, ligament tear, and

18

tendon release and cleanup, followed by physical therapy; he had a laminectomy and discectomy on his back in February 2014 followed by physical therapy afterward; and he returned to work on July 29, 2014. (Doc. 6-3, pp. 84-85, 95).[6] The SSA confirmed through Warner's employer that Warner received FECA worker's compensation through July 28, 2014, then returned to work on July 29, 2014. (Doc. 6-2, pp. 72-73).

Moreover, after the ALJ's decision, Major John W. Anderson wrote and explained there was no record that MSG Warner was mobilized and deployed from February 13, 2013 through July 27, 2014, and the ALJ's finding that Warner had been mobilized was erroneous. (Doc. 6-3, p. 70). Warner contends this "new" evidence warrants a remand for further consideration.[7]

The ALJ's finding that Warner was not disabled on February 13, 2013 because he was actively deployed is erroneous. Because the ALJ's factual finding that Warner was actively employed as a mobilized United States Army Reserve officer from February 13, 2013 to July 29, 2014, the Court must set aside that factual finding as not supported by substantial evidence. See Dellolio, 705 F.2d at 125.

The SSA initially found Warner was disabled as of May 1, 2014 (Doc. 6-1, p. 71), but overturned that finding due to what appeared to be subsequent substantial

---

[6] Warner's medical records are not in the administrative record because he only appealed the determination of his disability onset date and the issue of whether he engaged in substantial gainful activity. (Doc. 6-3, pp. 97-98).

[7] The evidence is not "new" because it was already in the administrative record. See 42 U.S.C. § 405(g); see also Bradley v. Bowen, 809 F.2d 1054, 1058 (5th Cir. 1987).

gainful activity in August 2014.  (Doc. 6-2, p. 97).  The ALJ did not make any findings as to whether Warner was disabled from February 13, 2013 through July 26, 2014.

Because the record is inconclusive, the case should be remanded for a determination as to whether Warner was disabled from February 13, 2013 to July 26, 2014.[8]

## III.  Conclusion.

Because substantial evidence does not support the ALJ's/Commissioner's conclusion that Warner's disability onset date was February 13, 2013 and that Warner was engaging in substantial gainful activity from February 13, 2013 until July 29, 2014, and the ALJ failed to make a finding as to whether Warner's work from

---

[8] In a closed-period case, the ALJ "determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of [the ALJ's] decision."  See Newbold v. Colvin, 718 F.3d 1257, 1260 (10th Cir. 2013) (quoting Shepherd v. Apfel, 184 F.3d 1196, 1199 n. 2 (10th Cir. 1999)); see also Waters v. Barnhart, 276 F.3d 716, 719 (5th Cir. 2002). "Typically, both the disability decision and the cessation decision ... are rendered in the same document."  See id.

When an ALJ grants disability insurance benefits to an applicant for a closed period of disability, two decision-making processes occur.  Joseph v. Astrue, 231 Fed. Appx. 327, 329 (5th Cir. 2007), cert. den., 552 U.S. 111 (2007) (citing Waters, 276 F.3d at 719).  First, the ALJ finds the applicant disabled and grants benefits.  See id.  Second, the ALJ engages in the termination decision-making process to find that the disability ended at some date prior to the hearing.  See id.  Under this latter process, disability benefits may be terminated if there is substantial evidence demonstrating that:
> (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
> (B) the individual is now able to engage in substantial gainful activity.

42 U.S.C. § 423(f)(1).  The burden rests on the government "to show that the claimant's disability has ended as of the cessation date."  See Joseph, 231 Fed. Appx. at 329 (citing Waters, 276 F.3d at 717.  Consequently, benefits may be terminated if the Commissioner proves (1) that there has been a medical improvement related to the ability to work, and (2) that the beneficiary can engage in substantial gainful activity.  See 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a).

August 9, 2012 to February 13, 2013 was an unsuccessful work attempt, IT IS RECOMMENDED that Warner's appeal be GRANTED, the final decision of the Commissioner be VACATED, and the case REMANDED for further proceedings consistent with this ruling.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this  30th  day of September, 2019.

Joseph H.L. Perez-Montes
United States Magistrate Judge

21